RECEIVED
IN LAKE CHARLES, LA

SEP 24 2007

ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | | |
|---|---|---|
| BEAUREGARD PARISH SCHOOL BOARD | : | DOCKET NO. 2:05 CV 1388 |
| VS. | : | JUDGE MINALDI |
| HONEYWELL INC. | : | MAGISTRATE JUDGE WILSON |

## MEMORANDUM RULING

Before the court is defendant Honeywell, Inc.'s Motion for Partial Summary Judgment. The plaintiff, Beauregard Parish School Board, filed a Memorandum in Response to Honeywell's Motion for Partial Summary Judgment on April 9.

## FACTS

On April 24, 2006, Beauregard Parish School Board ("BPSB") entered into a contract with Honeywell, Inc. ("Honeywell") whereby Honeywell was to: retrofit heating, ventilation, and electrical systems at multiple schools; install new chillers; replace fixtures and light bulbs with energy efficient models; and train BPSB employees in energy reduction and maintenance techniques.[1] The purpose of the contract was to provide operational savings to BPSB in the amount of $107,532 over a ten-year period.[2] BPSB paid Honeywell $714,308 for the retrofit, as well as monthly fees which, as of June 2005, amounted to $97,458.[3]

The contract also required Honeywell to perform an annual audit of energy savings and

---

[1] Pet. ¶ 5; Def.'s Ex. 6 (BPSB-Honeywell Contract).

[2] Pet. ¶ 6 ; Def.'s Ex. 6, at 18.

[3] Pet. ¶ 10; Def.'s Ex. 6, at 3-4.

1

submit a report to BPSB for the ten-year guarantee period.[4] Honeywell admits that it did not perform audits for years two through five.[5] In 2001, Honeywell allegedly prepared a "catch-up" report for those years.[6] In December 2001, after Honeywell delivered the catch-up reports, BPSB allegedly expressed its dissatisfaction with the methodology employed by Honeywell to calculate its energy savings.[7] Specifically, BPSB wanted the energy savings to be calculated using its utility bills.[8] Honeywell alleges that BPSB had not provided Honeywell with its utility bills for three years and had not given Honeywell notice of any changes to its facilities–including the addition of numerous computers, portable buildings, etc.–both of which a utility-based audit would have required.[9]

On January 9, 2002, Honeywell wrote to BPSB and nullified the guarantee.[10] On May 29, 2002, BPSB demanded that Honeywell provide a detailed accounting of Honeywell's calcuations to support the audit reports for years one through five.[11] In August 2002, the parties convened a conference call to discuss various matters.[12] On July 11, 2005, BPSB filed suit in the 36th

---

[4] Def.'s Ex. 6, at 18.

[5] Def.'s Statement of Undisputed Facts ¶ 16.

[6] *Id.*

[7] *Id.* ¶ 18.

[8] *Id.*

[9] *Id.*

[10] *Id.* ¶ 19; Pet. ¶ 11.

[11] Def.'s Statement of Undisputed Facts ¶ 20.

[12] *Id.* ¶ 20.

District, Parish of Beauregard.

Honeywell now moves for partial summary judgment on Beauregard's extracontractual claims, which include: a claim arising under the Louisiana Unfair Trade Practices and Consumer Protection Law (LUTPA), a misrepresentation claim, an unjust enrichment claim, a detrimental reliance claim, and a claim for new Trane chillers. Honeywell also asks this court to enforce the contract's consequential damage waiver clause.

## SUMMARY JUDGMENT STANDARD

A court should grant a motion for summary judgment when the file, including the opposing party's affidavits, demonstrates that "there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). The party moving for summary judgment is initially responsible for demonstrating the reasons justifying the motion for summary judgement by identifying portions of pleadings and discovery that demonstrate the lack of a genuine issue of material fact for trial. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). The court must deny the moving party's motion for summary judgment if the movant fails to meet this burden. *Id.*

If the movant satisfies this burden, however, the nonmoving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* In evaluating motions for summary judgment, the court must view all facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1975). There is no genuine issue for trial, and thus a grant of summary judgment is warranted, when the record as a whole "could not lead a rational finder of fact to find for the non-moving party...." *Id.*

## ANALYSIS

### A. Louisiana Unfair Trade Practices & Consumer Protection Law

BPSB alleges a violation of the Louisiana Unfair Trade Practices and Consumer Protection Law (LUTPA). LA. REV. STAT. ANN. § 51:1401, *et seq.* LUTPA proscribes "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce. This legislation is broadly and subjectively stated and does not specify particular violations. Rather, what constitutes an unfair trade practice is determined by the courts on a case-by-case basis." *Levine v. First Nat. Bank of Commerce*, 948 So.2d 1051, 1065 (La. 2006) (citing *Jarrell v. Carter*, 577 So.2d 120, 123 (La. App. 1 Cir. 1991)). "[I]t has been stated that a practice is unfair when it offends established public policy and when the practice is unethical, oppressive, unscrupulous, or substantially injurious to consumers and consumers include business competitors." *Roustabouts, Inc. v. Hamer*, 447 So.2d 543, 548 (La. App. 1 Cir. 1984).

BPSB does not have a viable claim under LUTPA.[13] "Where the plaintiffs are not in competition with the defendants, it appears that most courts treat the claim as a breach of contract claim, which is not actionable under LUTPA." *Landreneau v. Fleet Financial Group*, 197 F. Supp.2d 551, 557 (M.D.La. 2002). The Fifth Circuit has repeatedly recognized that "the statute does not provide an alternate remedy for simple breaches of contract....There is a great deal of daylight between a breach of contract claim and the egregious behavior the statute proscribes." *Turner v. Purina Mills, Inc.*, 989 F.2d 1419, 1422 (5th Cir. 1993) (citation omitted). Because the dispute between BPSB and Honeywell is a breach of contract claim, BPSB's

---

[13] The issue of whether the plaintiff states a claim under LUTPA is raised here *sua sponte.*

LUTPA claim is not actionable.

**B.     Detrimental Reliance**

Honeywell argues that BPSB's detrimental reliance claim must fail because (1) BPSB cannot identify an extra-contractual representation, and (2) any reliance upon extra-contractual representations is unreasonable as a matter of law in view of the written, executed contract between the parties. BPSB does not offer any legal arguments on this issue, but suggests that dismissal of this claim is premature because the jury should be free to find for BPSB on any of several alternate theories.

The theory of detrimental reliance provides: "A party may be obligated by a promise when he knew or should have known that the promise would induce the other party to rely on it to his detriment and the other party was reasonable in so relying." LA. CIV. CODE ANN. art. 1967. "The doctrine of detrimental reliance is designed to prevent injustice by barring a party from taking a position contrary to his prior acts, admissions, representations, or silence." *In re Ark-La-Tex Timber Co., Inc.*, 482 F.3d 319 (5th Cir. 2007) (citing *May v. Harris Management Corp.*, 2004-2657 (La. App. 1 Cir. 12/22/05); 928 So.2d 140, 145). "The doctrine usually functions when no written contract or an unenforceable contract exists between the parties." *Drs. Bethea, Moustoukas and Weaver LLC v. St. Paul Guardian Ins. Co.*, 376 F.3d 399, 403 (5th Cir. 2004) (citing *Jackson v. Lare,* 34-124 (La. App. 2 Cir. 11/1/2000); 779 So.2d 808, 814 n.1).

To recover under article 1967, a party must prove: (1) a representation by conduct or word; (2) made in such a manner that the promisor should have expected the promisee to rely upon it; (3) justifiable reliance by the promisee; and, (4) a change in position to the promisee's

5

detriment because of the reliance. *In re Ark-La-Tex Timber Co., Inc.*, 482 F.3d at 334 (citing *Suire v. Lafayette City-Parish Consol. Government*, 907 So.2d 37, 59 (La. 2005)). The Fifth Circuit recently stated that "[i]t is difficult to recover under the theory of detrimental reliance, because such a claim is not favored in Louisiana." *Id.*

Moreover, "Louisiana law recognizes certain situations where a plaintiff's reliance on a promise is unreasonable as a matter of law." *Bethea*, 376 F.3d at 403. An example of such a situation is where a party relies upon promises made outside of an unambiguous, fully-integrated agreement. *Id.* at 403-04. "Many courts have found a plaintiff's reliance to be unreasonable as a matter of law when the parties have a valid contract defining their rights and limiting the ways in which the contract may be modified." *Id.* at 404. Here, because there exists a fully integrated contract between BPSB and Honeywell, and because BPSB has failed to identify an extra-contractual "representation by conduct or word," BPSB's detrimental reliance claim is dismissed.

## C. Unjust Enrichment

Honeywell argues that in order to maintain an unjust enrichment claim, the plaintiff must have no other available remedy at law. Honeywell avers that because BPSB has asserted a claim for breach of contract, it has another available remedy.

The doctrine of unjust enrichment is codified by Louisiana Civil Code article 2298, which provides:

> A person who has been enriched without cause at the expense of another person is bound to compensate that person. The term "without cause" is used in this context to exclude cases in which the enrichment results from a valid juridical act or the law. The remedy declared here is subsidiary and shall not be available if the law provides another remedy for the impoverishment or declares a contrary rule.

LA. CIV. CODE ANN. art. 2298. A party seeking to recover pursuant to the theory of unjust enrichment bears the burden of proving five elements: (1) an enrichment; (2) an impoverishment; (3) a connection between the enrichment and the resulting impoverishment; (4) an absence of "justification" or "cause" for the enrichment and impoverishment; and, (5) no other remedy at law available to plaintiff. *Moroux v. Toce*, 2006-831 (La. App. 3 Cir. 11/2/06); 943 So.2d 1263; *Baker v. Maclay Properties Co.*, 2006-1000 (La. App. 1 Cir. 5/4/07); 2007 WL 1300820, *1; *see also* LA. CIV. CODE ANN. art. 2298. A plaintiff has the burden of proving each element of unjust enrichment by a preponderance of the evidence. *Tandy v. Pecan Shoppe of Minden, Inc.*, 34-578 (La. App. 2 Cir. 4/1/01); 785 So.2d 111, 117.

Here, BPSB's claims for breach of contract survive summary judgment. BPSB and Honeywell have a valid, binding contract, and BPSB has a remedy available at law via its breach of contract claims. Accordingly, BPSB's unjust enrichment claim is dismissed.

## D. Negligent Misrepresentation

Honeywell argues that a negligent misrepresentation claim[14] is delictual and therefore subject to a one-year prescriptive period. Honeywell avers that BPSB's negligent misrepresentation claim "accrued no later than January 9, 2002, when Honeywell nullified the guarantee." BPSB filed suit on July 11, 2005; thus, Honeywell asserts that any claim for

---

[14] "A person commits the tort of negligent misrepresentation when (1) he has a legal duty to supply correct information; (2) he breaches that duty; and (3) his breach causes damages to the plaintiff. *Society of Roman Catholic Church of Diocese of Lafayette, Inc. v. Interstate Fire & Cas. Co.*, 126 F.3d 727, 742 (5th Cir. 1997) (citing *Barrie v. V.P. Exterminators, Inc.*, 625 So.2d 1007 (La.1993). "This tort applies in both nondisclosure and misinformation cases." *Society*, 126 F.3d at 742 (citing *Nesbitt v. Dunn*, 28240 (La. App. 2d Cir. 4/3/96); 672 So.2d 226, 231).

negligent misrepresentation has prescribed.

"A person commits the tort of negligent misrepresentation when (1) he has a legal duty to supply correct information; (2) he breaches that duty; and, (3) his breach causes damages to the plaintiff. *Society of Roman Catholic Church of Diocese of Lafayette, Inc. v. Interstate Fire & Cas. Co.*, 126 F.3d 727, 742 (5th Cir. 1997) (citing *Barrie v. V.P. Exterminators, Inc.*, 625 So.2d 1007 (La.1993); LA. CIV. CODE ANN. arts. 2315 & 2216). "This tort applies in both nondisclosure and misinformation cases." *Society*, 126 F.3d at 742 (citing *Nesbitt v. Dunn*, 28240 (La. App. 2 Cir. 4/3/96); 672 So.2d 226, 231).

"The action for negligent misrepresentation arises *ex delicto*...and is subject to the one year prescriptive period of Civil Code article 3492...." *National Council on Compensation Ins. v. Quixx Temporary Services, Inc.*, 95-0725 (La. App. 4 Cir. 11/16/95); 665 So.2d 120, 122 (internal citations omitted). The one year prescription period for delictual actions commences from the date the injury or damage is sustained. *Wimberly v. Gatch*, 635 So.2d 206, 211 (La. 1994) (citations omitted). This prescription statute is strictly construed against prescription and in favor of the obligation sought to be extinguished by it. *Id.*

The doctrine of *contra non valentem* is an exception to the prescription rules, and it suspends prescription when the case satisfies one of four scenarios: 1.) where there was some legal cause which prevented the courts or their officers from taking cognizance of or acting on the plaintiff's action; 2.) where there was some condition coupled with a contract or connected with the proceedings which prevented the creditor from suing or acting; 3.) where the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause

of action; and, 4.) where some cause of action is not known or reasonably knowable by the plaintiff, even though his ignorance is not induced by the defendant. *Id.* The plaintiff bears the burden of showing why the claim has not prescribed. *Id.* BPSB has not demonstrated that *contra non valentem* applies in its case such that the one-year period is suspended.

Prescription may also be suspended where the tort is continuing. A continuing tort arises when "acts or conduct are continuous on an almost daily basis, by the same actor, of the same nature, and the conduct becomes tortious and actionable because of its continuous, cumulative, synergistic nature." *Bustamento v. Tucker*, 607 So.2d 532, 542 (La. 1992). In the case of a continuing tort, prescription does not commence until the last act occurs or the conduct is abated. *Id.* As to whether a tort is continuous, the Louisiana Supreme Court held:

> A continuing tort is occasioned by [the continual] unlawful acts, not the continuation of the ill effects of an original, wrongful act." ... Addressing the requirement that there be continuous conduct by the defendant, we stated that "[t]he continuous conduct contemplated in a continuing tort must be tortious and must be the *operating cause* of the injury....When a defendant's damage-causing act is completed, the existence of continuing damages to a plaintiff, even progressively worsening damages, does not present successive causes of action accruing because of a continuing tort.

*In re Moses*, 788 So.2d 1173, 1183 (La. 2001) (quoting *Crump v. Sabine River Authority*, 737 So.2d 720 (La. 1999) (other internal citations omitted)). Honeywell's alleged unlawful acts were not continuous. Rather, the only facts that BPSB alleges are the continuation of the ill effects of an original, wrongful act. Therefore, BPSB's negligent misrepresentation claim is barred by the one-year statute of limitations.

**E. Claim for New Trane Chillers**

Honeywell argues that the court should dismiss BPSB's claim for new Trane chillers

9

because BPSB knowingly accepted McQuay chillers. BPSB claims that its employees and individual board members did not have authority to receive the substituted McQuay chillers. BPSB also claims that Honeywell knew that school employees or individual board members lacked the authority to modify public contracts.

Professor Litvinoff, in his Obligations treatise, writes:

> [W]hen the obligor is bound to deliver a specified and individualized thing, his performance will not extinguish the obligation unless he delivers that thing.... Nevertheless, the obligor may give a different thing if the obligee consents to receive it in performance of the obligation. This is the case of a the giving in payment, which is actually an agreement between obligor and obligee to extinguish the obligation through the rendering of a performance different from that originally contemplated.

5 LA. CIV. L. TREATISE § 13.12 (2006-07) (citing LA. CIV. CODE ANN. arts. 2655 & 2659).[15]

BPSB does not present evidence that its employee or board member protested the installation, or that BPSB itself protested the installation of the substitute McQuay chillers. Thus, because BPSB knowingly accepted the McQuay chillers, BPSB's claim for new Trane chillers is dismissed.

## F. Enforcement of Waiver of Consequential Damages

Honeywell asks the court to uphold the contract's consequential damage[16] waiver clause. This clause excludes "incidental, special, consequential, or indirect" damages. Honeywell asserts that its sole liability for a failure of energy or operational savings is limited to the contractual guarantee of

---

[15] Article 2655 states, "Giving in payment is a contract whereby an obligor gives a thing to the obligee, who accepts it in payment of a debt." Article 2659 explains, "The giving in payment is governed by the rules of the contract of sale, with the differences provided for in this Chapter."

[16] Consequential damages are "Losses that do not flow directly and immediately from an injurious act but that result indirectly from the act." BLACK'S LAW DICTIONARY (8th ed. 2004).

Louisiana Civil Code provides, in pertinent part, "Any clause is null that, in advance, excludes or limits the liability of one party for intentional or gross fault that causes damage to the other party." LA. CIV.CODE ANN. art. 2004. The comment to article 2004 notes that "such clauses are against public policy because the overriding principle of good faith would be destroyed if it were possible to contract away liability for fraud." *Id.* at cmt. (a). Thus, to the extent that the contractual waiver of consequential damages excludes damages arising out of bad faith or intentional misconduct, the waiver must be void. The waiver is, however, otherwise enforceable because it is clear and unambiguous, contained in the contract, and was brought to the attention of BPSB.

For the reasons stated in this Memorandum Ruling,

IT IS ORDERED that the Defendant's Motion for Partial Summary Judgment filed on behalf of Honeywell Corporation is hereby GRANTED;

IT IS ORDERED that Plaintiff's LUTPA claim is DISMISSED;

IT IS ORDERED that Plaintiff's detrimental reliance claim is DISMISSED;

IT IS ORDERED that Plaintiff's unjust enrichment claim is DISMISSED;

IT IS ORDERED that Plaintiff's claim that it be awarded new Trane chillers is DISMISSED;

IT IS FURTHER ORDERED that the contract's waiver of incidental, special, consequential, or indirect damages is enforceable insofar as it does not limit damages arising out of Honeywell's bad faith.

Lake Charles, Louisiana, this 24 day of September, 2007

_____
PATRICIA MINALDI
UNITED STATES DISTRICT JUDGE

13