U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED - LAKE CHARLES

MAY 2 8 2008

ROBERT H. SHEMWELL, CLERK
BY _____ DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | | |
|---|---|---|
| BEAUREGARD PARISH SCHOOL BOARD | : | DOCKET NO. 2:05 CV 1388 |
| VS. | : | JUDGE MINALDI |
| HONEYWELL INC. | : | MAGISTRATE JUDGE KAY |

## MEMORANDUM RULING

Before the court is defendant Honeywell, Inc.'s (hereinafter "Honeywell") Motion for Summary Judgment [doc. 139]. The plaintiff, Beauregard Parish School Board (hereinafter "BPSB"), filed a Memorandum in Opposition [doc. 141]. Honeywell filed a Reply [doc. 143]. The matter is scheduled for a two-week jury trial starting on June 23, 2008.

## FACTS

On April 24, 1996, BPSB and Honeywell entered into a contract (hereinafter "the contract") that required Honeywell to install new, energy-efficient light bulbs and ballasts at fifteen school campuses and office buildings in the district.[1] The contract was to provide BPSB with operational savings of $52,833 in the first year, and $15,600 in years two through ten.[2] The contract also required Honeywell to provide one hour of training annually to principals, faculty, and staff at each campus on energy efficiency, lighting, and HVAC.[3] Honeywell was also

---

[1] Def.'s Ex. 6 (BPSB-Honeywell contract).

[2] *Id.* at 19.

[3] *Id.* at 26.

required to provide one hour of training annually for all school coordinators, and four hours of training annually to maintenance personnel.[4] BPSB paid Honeywell for all of Honeywell's work in November of 1996.[5]

On September 24, 2007, this Court granted partial summary judgment in favor of Honeywell, and dismissed BPSB's extracontractual claims, which included: a Louisiana Unfair Trade Practices and Consumer Protection Law claim, a misrepresentation claim, an unjust enrichment claim, a detrimental reliance claim, and a claim for new Trane chillers.[6] This Court also found that the contract's consequential damage waiver clause is enforceable.[7] This Court also found that the contract between Honeywell and BPSB is fully integrated.[8]

On March 24, 2008, this Court granted Honeywell's Motion to Exclude Expert Testimony of Lawrence W. Blanchette in its entirety.[9] The Court found that Blanchette did not qualify for expert status in the field of measurement and verification (hereinafter "M&V") savings.[10] The Court further found that a utility bill analysis is an inappropriate measure of M&V savings in this case because energy savings are a small percentage of district-wide savings, especially where Blanchette failed to account for several crucial variables, such as weather and

---

[4] *Id.* at 27-28.

[5] Def.'s Ex. 10, p. 221.

[6] *Id.*

[7] *Id.* The Court noted that the waiver was enforceable except as to damages arising out of bad faith or intentional misconduct. *Id.*

[8] Mem. Ruling (Sept. 24, 2007) [doc. 95].

[9] Mem. Ruling (March 24, 2008) [doc. 134].

[10] *Id.*

2

new computers, which require more air conditioning.[11] This Court also restated that pre-contractual negotiations are inadmissible because the contract is fully integrated.[12]

## SUMMARY JUDGMENT STANDARD

A court should grant a motion for summary judgment when the file, including the opposing party's affidavits, demonstrates that "there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). The party moving for summary judgment is initially responsible for demonstrating the reasons justifying the motion for summary judgment by identifying portions of pleadings and discovery that demonstrate the lack of a genuine issue of material fact for trial. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). The court must deny the moving party's motion for summary judgment if the movant fails to meet this burden. *Id.*

If the movant satisfies this burden, however, the nonmoving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* In evaluating motions for summary judgment, the court must view all facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1975). There is no genuine issue for trial, and thus a grant of summary judgment is warranted, when the record as a whole "could not lead a rational finder of fact to find for the non-moving party...." *Id.*

## ANALYSIS

Honeywell brings its Motion for Summary Judgment to dismiss all of BPSB's remaining

---

[11] *Id.* at 5-7.

[12] *Id.*

3

claims. First, Honeywell seeks summary judgment on claims BPSB raised for the first time through Blanchette's expert report. Second, Honeywell seeks summary judgment on all of BPSB's remaining claims.

### A.) Claims Raised For the First Time in Blanchette's Expert Report

Blanchette, on BPSB's behalf, raised extracontractual claims against Honeywell for annual construction advice, missed technological opportunities, First Street School analysis, and replacement lighting. Honeywell argues that the parties' contract never provided for these items. Honeywell also argues that these claims are not contained within BPSB's complaint, the Rule 26(a)(1) disclosures, or interrogatories.

BPSB argues that the contract is not integrated because integration is a common-law concept that Louisiana's civil law does not recognize (citing Litvinoff, *The Law of Obligations*, Part I § 12.93). BPSB also argues that Honeywell's engineer stated that the contract could not be understood from the four corners of the document and thus the contract is not fully integrated.

If contractual terms are unambiguous, the contract may be interpreted as a matter of law, making summary judgment appropriate. *Brown v. Drillers, Inc.*, 93-1019 (La. 1/14/94); 630 So.2d 741, 750; *see also* LA. STAT. ANN. CIV. CODE art. 2046. When a contract is clear, the court may look no further than the four corners of the document and cannot consider parol evidence. LA. STAT. ANN. CIV. CODE art. 1848. Furthermore, Louisiana law gives effect to integration clauses where the contract properly reflects the parties' intentions. *Condrey v. SunTrust Bank of Georgia*, 429 F.3d 566, 564 (5th Cir. 2005) (finding under Louisiana state law that a contract was fully integrated when it contained language that "[t]his agreement sets forth the entire agreement and understanding between the parties as to the subject matter of this

agreement...").

The contract between Honeywell and BPSB is fully integrated.[13] The contract does not require Honeywell to provide annual construction advice.[14] This contract also does not require Honeywell to affirmatively seek technological opportunities for BPSB.[15] The contract does not require Honeywell to perform any work at the First Street School.[16] Because the contract between BPSB and Honeywell is fully integrated, Honeywell is only bound to perform the terms of the contract, and thus these extracontractual claims are dismissed.

Blanchette also claims that Honeywell should remove and replace all of the lighting at a cost of $595,085. BPSB does not present competent summary judgment evidence that Honeywell should replace all of the lighting. BPSB cites to one page out of a catalog to show

---

[13] *See* Mem. Ruling (Sept. 24, 2007) [doc. 95]. Like the integration clause in *Condrey*, BPSB-Honeywell contract states:

> [t]his guarantee represents the entire agreement between Honeywell and the Client with regard to the energy and operational guarantee. This guarantee does not include any documents, materials, commitments, representations or comments that are not expressly incorporated by reference into this guarantee. The parties agree that this guarantee describes the full and complete agreement with respect to such guarantee and that there are no other agreements relating to or modifying this provision...

Def.'s Ex. 6 (BSBP-Honeywell contract).

[14] Def.'s Ex. 6 (BPSB-Honeywell contract). Furthermore, Blanchette admitted that the contract does not require annual construction advice, but he felt this requirement should have been part of the contract. Def.'s Ex. 16 (Blanchette Aff. pp. 253-54).

[15] Def.'s Ex. 6 (BPSB-Honeywell contract).

[16] *Id.* Blanchette based this claim on his belief that negotiations surrounding the First Street School should have been incorporated in the contract. Def.'s Ex. 16 (Blanchette Aff. pp. 214-15).

5

that Honeywell installed improper lighting.[17] Thus, BPSB's claim that Honeywell should provide replacement lighting at a cost of $595,085 is also dismissed.

### B.) BPSB's Remaining Claims

BPSB's remaining claims are based upon Honeywell's alleged failure to provide the energy savings promised in the contract and Honeywell's alleged breach of contract with respect to the lighting installation.

#### 1.) Energy Savings and Damage Claims

BPSB is suing for damages relating to the energy savings guarantee in the contract and other energy savings BPSB argues Honeywell should have provided. BPSB alleges that the chiller and lighting equipment Honeywell installed did not save energy as promised over a ten-year period, and actually increased BPSB's operational costs.

"Louisiana law forbids an award of damages based on speculation." *Stokes v. Georgia-Pacific Corp.*, 894 F.2d 764, 770 (5th Cir. 1990). Louisiana courts have granted summary judgment in contract cases where the plaintiff could not present proper proof of damages. *Infusion Res., Inc. v. Minimed, Inc.*, 351 F.3d 688, 695-96 (5th Cir. 2003). Similarly, summary judgment is also appropriate when the plaintiff fails to raise a material issue of fact regarding causation. *See Vekic v. Wood Energy Corp.*, 2004 WL 2367732, *3 (E.D. La. Oct. 20, 2004).

Honeywell argues that BPSB cannot prevail on its energy savings claim because BPSB must establish both causation and damages with reasonable certainty, which Honeywell argues is impossible without expert testimony. Honeywell argues that BPSB's sole source of expert analysis on damages was from Blanchette, who is excluded as an expert witness per the March

---

[17] Pl.'s Ex. 20.

24, 2008 Memorandum Ruling. Honeywell argues that BPSB has no other competent evidence on damages, and points out that this Court has held that an energy savings analysis requires an expert qualified in M&V who uses proper techniques and industry standards. Honeywell also argues that BPSB cannot prove causation, or that any increase in energy costs is attributable to Honeywell's work and not something else, which is another essential element of a contract claim. Additionally, Honeywell argues that BPSB must present an expert to refute Honeywell's M&V expert, and that a utility bill analysis is inappropriate.[18] Thus, Honeywell argues, summary judgment is appropriate because BPSB cannot raise a genuine issue of fact as to either damages or causation, two essential elements of its claim.

BPSB argues that it can prove damages based on its utility bills, which can be introduced by fact witnesses. BPSB argues that the contract guarantees energy savings of $91,932 every year of the ten-year contract.[19] BPSB seeks to produce utility bills to show that it did not save $91,932 in savings each year of the contract, as measured against the three-year average, running from September 1, 1992 through August 31, 1995.[20] BPSB would introduce evidence that the average annual electricity bills for the baseline period were $625,182.42, and subtracting $91,932 from this amount would give a baseline cost of $533,240.42 per year. BPSB argues that because the utility bills were higher than the baseline, it can satisfy its burden of proving damages.

BPSB next argues that the burden then shifts to Honeywell to make any adjustments it

---

[18] Bradford Aff., pp. 8-22 [doc. 112-9].

[19] Pl.'s Ex. 1, p. 32 (BPSB-Honeywell contract).

[20] *Id.* at 18.

deems "significant" and to justify those adjustments.[21] BPSB states that the utility bills have been submitted to Honeywell and will be introduced as exhibits at trial by either the Superintendent, the BPSB's custodian of records, or BPSB's Director of Finance.[22] BPSB states that the totals for each year is "just simple addition, which does not require an expert."[23] BPSB also claims that Honeywell does not dispute that BPSB's energy costs increased after the retrofit.

Next, BPSB argues that it can use Honeywell's own expert report to demonstrate that Honeywell did not achieve the guaranteed savings in every year of the contract.[24] BPSB argues that it has not made any significant changes that would warrant an adjustment to the contract's energy baseline.[25] Thus, BPSB argues all it must do to recover is present the utility bills to show the shortfall, and then the burden shifts to Honeywell to refute BPSB's evidence and explain why the utility bills need to be adjusted.

BPSB further argues that Honeywell admits it failed to install much of the contracted-for equipment,[26] and that Honeywell's failure to perform its contractual obligations and knowingly trying to conceal its breach is bad faith. Thus, BPSB argues that its bad faith claim should proceed because it was not waived, and bad faith is an issue of fact that is not appropriate for

---

[21] Pl.'s Ex. 1, pp. 20, 23 (BPSB-Honeywell contract).

[22] BPSB summarizes its actual costs for each year, the baseline amount, and the savings that it argues were not achieved. Pl.'s Mem. in Opposition to Def.'s Mot. for Summary Judgment, at 3. BPSB argues that the total savings not achieved is $1,755,641.72. *Id.*

[23] Pl.'s Mem. in Opposition to Def.'s Mot. for Summary Judgment, at 4.

[24] Pl.'s Ex. 3, p. 4 (Jim Bradford Expert Report).

[25] *See* Pl.'s Mem. in Opposition to Def.'s Mot. for Summary Judgment, at 9-11.

[26] BPSB cites no evidence for this proposition.

summary judgment.

BPSB also argues that the contract provided Honeywell's annual training and audits would save BPSB $19,000 for each year of the contract.[27] BPSB further argues that it is not required to present expert testimony for its damages claim because Honeywell admits it did not provide these services, and accordingly, a jury could find for BPSB on this claim.

In Reply, Honeywell argues that BPSB erroneously characterizes the contract's guarantee. The contract does not promise that BPSB's utility bills will decrease no matter what; the contract promises that the equipment Honeywell installs will save a specified amount of energy over a ten-year period. Thus, Honeywell argues that a mere increase in total utility costs, standing alone, does not prove damages.

Honeywell also argues that BPSB's arguments regarding Bradford's expert opinion are inadmissible hearsay and were not incorporated in Bradford's expert report. Honeywell notes that BPSB does not cite to Bradford's deposition testimony or expert report, but instead cites to notes that Bradford made during Blanchette's deposition that paraphrase Blanchette's now excluded testimony and is thus misleading. Finally, Honeywell argues that BPSB's contention that BPSB is entitled to $19,000 annual operational savings from training and auditing is fabricated, since there is no evidence that $19,000 in savings was to come from these services.

The plaintiff bears the burden of proof to show damages suffered as a result of breach of contract. *Napasco Int'l Inc. v. Tymshare, Inc.*, 566 F. Supp. 654, 661 (E.D. La. 1983). This Court rejects BPSB's argument that BPSB only needs to present utility bills to show a shortfall

---

[27] Pl.'s Ex. 1, pp. 18, 32 (BPSB-Honeywell contract). In fact, the contract states that BPSB will save $19,000 as a transfer from operational savings, and makes no mention of savings from annual training and audits. *Id.* at 32.

9

between the baseline calculations and the subsequent years, and then the burden shifts to Honeywell to prove any adjustments. The contract provides that BPSB shall provide Honeywell with the utility bills on a monthly basis, including any changes to energy-operating equipment, and Honeywell would then perform calculations to assess the program's ongoing effectiveness.[28] The contract places the burden on BPSB to inform Honeywell of the addition of items such as computers or vending machines, which would alter the baseline measurement.[29] Nowhere in the contract is Honeywell required to prove any adjustments. Thus, without anything providing otherwise in the contract, BPSB, as the plaintiff, has the burden of proving damages.

A plaintiff cannot prove damages by speculation. *Napasco*, 566 F. Supp. at 662. BPSB cannot prove damages by calling a fact witness to introduce utility bills. Damages in this case are not a matter of "just simple addition," as BPSB argues. This Court has already held that a utility bill analysis performed by an expert is an inappropriate methodology to prove damages in this case, especially where the analysis does not account for any variables.[30] It logically follows that using a fact witness to introduce utility bills from each year without accounting for any variables is also insufficient to prove damages.

BPSB also cannot satisfy its burden of proving damages through Honeywell's expert witness, as BPSB cites to Bradford's notes that were apparently taken during Blanchette's deposition, rather than Bradford's own deposition testimony or Bradford's expert report.[31] BPSB

---

[28] *Id.* at 20, 24.

[29] *Id.* at 24.

[30] Mem. Ruling (March 24, 2008) [doc. 134].

[31] Pl.'s Ex. 10.

provides no foundation for Bradford's handwritten notes, and the notes alone are insufficient. Moreover, BPSB has not presented competent summary judgment that there is a genuine issue of material fact as to its damages. BPSB hired Blanchette to "analyze the performance-guarantee contract...with Honeywell, to determine if BPSB had any damages and to quantify BPSB's damages, if any."[32] BPSB's Rule 30(b)(6) witness deferred to BPSB's expert on how to calculate energy savings, stating that "somebody that's skilled in this would know what to do–I'm not."[33] Because having a fact witness introduce utility bills is not adequate to prove damages, BPSB cannot prove an essential element of its case and summary judgment is appropriate.

BPSB's claim that it does not require any evidence to recover $19,000 per year due to Honeywell's alleged failure to train and audit is mistaken. The contract states that BPSB will receive a $19,000 savings that is a transfer from operational savings.[34] There is no indication this $19,000 is linked to a failure to train and audit. Similarly, BPSB presents no competent summary judgment evidence on the issue of bad faith. BPSB alludes to "fact testimony and Honeywell's own internal emails" that show Honeywell attempted to conceal the fact that it did not install equipment it was required to install, and states that BPSB does not need an expert to prove bad faith. BPSB fails to produce any of this fact testimony or internal e-mails. Because BPSB has failed to demonstrate by competent summary judgment evidence that there is a triable issue of fact as to Honeywell's bad faith or the loss of $19,000 per year, these claims are likewise dismissed.

---

[32] Blanchette Aff. ¶ 2 [doc. 127-7].

[33] Def.'s Ex. 14, pp. 14-16.

[34] Pl.'s Ex. 1, p. 32 (BPSB-Honeywell contract).

11

*2.) Lighting Installation*

BPSB argues that the lighting retrofit was improperly performed. Honeywell argues that because BPSB accepted and paid for the lighting retrofit in 1996 that BPSB may not now argue for a new lighting retrofit. It is undisputed that BPSB paid for the lighting retrofit in full in 1996.

> [W]hen the obligor is bound to deliver a specified and individualized thing, his performance will not extinguish the obligation unless he delivers that thing.... Nevertheless, the obligor may give a different thing if the obligee consents to receive it in performance of the obligation. This is the case of a the giving in payment, which is actually an agreement between obligor and obligee to extinguish the obligation through the rendering of a performance different from that originally contemplated.

5 LA. CIV. L. TREATISE § 13.12 (2006-07) (citing LA. CIV. CODE ANN. arts. 2655 & 2659).[35] "The acceptance of a work without objection, protest or complaint respecting the manner of performance, estops the owner from recovery of damages resulting from defective work. However, acceptance with the understanding that certain defects will be remedied does not bar recovery for the cost of remedying such defects." *Brouillette v. Consol. Constr. Co. of Florida, Inc.*, 422 So.2d 176, 177 (La. Ct. App. 1982). Furthermore, an owner is barred from recovering the cost of the work if the work was accepted "despite the patent defects or imperfections discoverable upon reasonable inspection." *Larkins v. Cage Contractors, Inc.*, 580 So.2d 1068, 1069 (La. App. 4th Cir. 1991). Thus, whether BPSB has a claim against Honeywell depends on whether there is at least a triable issue of fact that BPSB accepted the work with the understanding that certain defects would later be remedied.

---

[35] Article 2655 states, "Giving in payment is a contract whereby an obligor gives a thing to the obligee, who accepts it in payment of a debt." Article 2659 explains, "The giving in payment is governed by the rules of the contract of sale, with the differences provided for in this Chapter."

12

Honeywell argues that BPSB is estopped from now claiming damages arising from the lighting retrofit because BPSB accepted and paid for the lighting retrofit without protest.[36] Moreover, Honeywell notes that this Court dismissed BPSB's claim for replacement Trane chillers because BPSB accepted and paid for McQuay chillers without protesting their installation in 1996, which is the same rationale Honeywell presents here.[37]

BPSB argues that although it paid Honeywell in full, BPSB did not accept Honeywell's installation of the lighting retrofit. BPSB notes that Honeywell continued to install and replace ballasts after the last payment.[38] BPSB also argues that Honeywell's internal documents required Honeywell to obtain a signed acceptance, which Honeywell never attempted to procure.[39] BPSB states several instances where the lighting retrofit that was installed does not comport with the lighting for which BPSB contracted. Based on these claims, BPSB argues that a jury could easily find that every single ballast Honeywell installed needs to be replaced even without expert testimony.

In Reply, Honeywell argues that BPSB cites to unidentified documents, and presents no testimony, lay or expert, about the documents or any alleged deficiencies, yet argues that a jury could find for BPSB. Moreover, Honeywell notes that BPSB withheld Honeywell's final payment, due in August 1996, until November 1996, when the Board voted unanimously and

---

[36] Def.'s Ex. 10, p. 221.

[37] Mem. Ruling (Sept. 24, 2007) [doc. 97].

[38] Pl.'s Ex. 17.

[39] Pl.'s Ex. 19, pp. 62-64 (Chris Pieper Dep.)

13

without protest to release the funds to Honeywell.[40] Honeywell also distinguishes BPSB's routine maintenance pursuant to the parties' service agreement from the original installation work completed in 1996, and argues that performing routine maintenance does not indicate that the original work was not accepted.

Honeywell also rejects BPSB's argument that none of the Honeywell performance failures would be apparent to a layperson, such as a BPSB maintenance employee. Honeywell argues that the lighting installation was open, obvious, and observed daily by building occupants, and that BPSB had ample time in which to inspect the equipment before rendering final payment. Honeywell alternatively argues that if the non-conformities were not apparent to a layperson then BPSB would require an expert to prove its claim, which it does not have.

The contract provides that "the warranty effective date is the date of the Customer acceptance, the date the job is finaled, or the date the Customer begins to receive beneficial use of the product, whichever comes first."[41] The contract also provides that the maintenance agreement start date occurs at the acceptance of retrofit services.[42] Nothing in the contract requires Honeywell to obtain written acceptance from BPSB. The contract is fully integrated, and as such, this Court will not look beyond the contract to determine the parties' obligations. Because the contract did not require Honeywell to obtain BPSB's written acceptance, there is no requirement that Honeywell do so. Accordingly, BPSB's deposition testimony is inadmissable

---

[40] Def.'s Ex. 10.

[41] Def.'s Ex. 6.

[42] *Id.*

because it seeks to impose responsibilities on Honeywell that are not in the contract.

BPSB's sole document it proffers to show that the lighting installed was not the lighting contracted for is one page from a catalog.[43] BPSB does not provide any foundation or testimonial evidence for this catalog, and the catalog, without further explanation, is insufficient to prove that the lighting installed did not conform to the contract's specifications. Thus, BPSB did not present competent summary judgment evidence that it paid for the lighting retrofit with protest or with the understanding that certain defects would be remedied. There is no triable issue of fact as to whether the lighting retrofit was properly installed; accordingly,

IT IS ORDERED that Honeywell's Motion for Summary Judgment [doc. 139] is hereby GRANTED,

IT IS FURTHER ORDERED that this case is hereby DISMISSED in its entirety.

Lake Charles, Louisiana, this _____ day of _____, 2008.

PATRICIA MINALDI
UNITED STATES DISTRICT JUDGE

---

[43] Pl.'s Ex. 20.